CURTISS, administratrix, *vs.* TRIPP and others.

The heirs of a mortgagee are not competent witnesses to prove the *bona fides* of the mortgage or its continuing force as a lien, in consequence of their interest.

When a mortgagee who had taken a mortgage from his son, encouraged a purchaser to purchase the mortgaged premises, and said his son would arrange about the mortgage and left the mortgage with his son; and the son sold to the purchaser, and delivered to him the mortgage as satisfied, but it was afterwards handed to the son to enable him to procure a legal discharge from the father, and the mortgage was destroyed by fire before such discharge was procured,—Held, that the mortgage could not be enforced by the administratrix of the father after his death, as against the purchaser.

*G. H. Chapin*, for complainant.

*A. Gardiner*, for defendant Tripp.

THE VICE CHANCELLOR. The bill in this case was filed to foreclose a mortgage executed by Randall Curtiss to Lendall Curtiss, the intestate. Randall Curtiss was the son of Lendall Curtiss. The testimony of the heirs of Lendall Curtiss cannot be received in this case. They were clearly interested. From the testimony of the admissible witnesses, the following appear to be the facts. Lendall Curtiss owned a farm in Parma, Monroe county, and his son, Randall Curtiss, owned a small tannery lot upon which he had executed the mortgage in question, to his father. The father was desirous of selling out, himself, and have his son sell out and move to Michigan; and desired the defendant Tripp to purchase, or procure some one to purchase, both his and his

son's property. Tripp did procure a person to pur-
chase the farm. He was then urged by the father
to purchase the tannery lot. The father was asked
what would be done with the mortgage. He an-
swered that the mortgage could be arranged at any
time—that he stood ready to discharge it—and that
he should leave the business with his son Randall;
and whatever bargain he made, he would agree to.
On the day the father left for Michigan, when asked
for a discharge of the mortgage, he said the mort-
gage was a family affair, and was never intended to
be any thing else. Soon after the father left, Tripp
purchased the tannery lot of the son by conveying to
him, as a consideration, a lot of land in Michigan;
and took from the son a deed of the tannery lot and
a delivery of the mortgage. Tripp delivered back
the mortgage to Randall to take to Michigan, to pro-
cure a legal discharge to be acknowledged by the
father. Randall went to Michigan, and before the
discharge was procured, the father died. The mort-
gage was destroyed by fire, while in the possession
of the complainant. The complainant and Randall
Curtiss appeared before the judge of probate in Mi-
chigan, to settle the amount due from Randall to the
estate of his father; and among the amounts so ad-
mitted to be due, was the amount of this mortgage.
It is to foreclose this mortgage, that this bill is filed.
It is very clear that Tripp cannot hold the mortgaged
premises discharged of the lien of the mortgage, on
the ground that Lendall Curtiss either stood by and
silently acquiesced in the purchase made by Tripp,
without disclosing his lien, or on the ground that he,
having a lien, encouraged Tripp to purchase. Both
parties were aware of the existence of the mortgage;

Sept. 1840.

Curtiss
v.
Tripp and
others.

and the declarations of Lendall Curtiss do not go the length of saying that the mortgage should be deemed to be no lien, or that it was no lien. A discharge of it was promised, but upon what terms, whether of immediate or remote payment, or without any payment at all, is left entirely indefinite. If the declarations of Lendall Curtiss went no farther than this, I should think Tripp would not be justified in making the purchase, and claiming that the premises were discharged from the mortgage. But Lendall Curtiss in addition said that he should leave the business with his son; and whatever bargain his son made, he would agree to. The mortgage was actually in the son's hands, and actually delivered up to Tripp upon the sale. This must be considered an equitable discharge of the premises from the incumbrance of this mortgage. The mortgage was returned to the son only to procure a legal discharge to enable Tripp to cancel it of record. It would appear, connecting the declarations of the father with the possession of the mortgage by the son, that the father had put it into the son's power, by means of such possession and his (the father's) declarations, to induce Tripp at least to believe that the mortgage would no longer be held as a lien upon the property. If the son has violated any understanding between himself and his father, the estate of the father must suffer the consequences. Tripp should not suffer. There is every appearance of fairness in the transaction, on his part. He had every reason to believe that the son was authorised to discharge the mortgage. Under such circumstances the mortgage cannot be enforced as against Tripp, and the complainant's bill must be dismissed as to him. From all

the facts, I think, too, it should be so dismissed with costs against the complainant.